**GREENBERG TRAURIG, LLP**
ATTORNEYS AT LAW
SUITE 700
2375 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016
(602) 445-8000

Paul D. McGrady, Jr., *pro hac vice application pending*, McGradyP@gtlaw.com
Kimberly A. Warshawsky, SBN 022083, WarshawskyK@gtlaw.com
Jason B. Elster, *pro hac vice application pending*, ElsterB@gtlaw.com
Attorneys for Plaintiff Diners Club International

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| DINERS CLUB INTERNATIONAL LTD., a New York corporation, <br><br> Plaintiff, <br><br> v. <br><br> ARVIN POOLE and JANE DOE POOLE, husband and wife; SHAARP VENTURES, LLC, d/b/a SHAARP Hosting, a Texas limited liability company; GWEN D. CASH and JOHN DOE CASH, husband and wife; GDC ENTERPRISES, a Texas entity; and GDCash, LLC, a Texas limited liability company, <br><br> Defendants. | No. <br><br> **COMPLAINT** <br><br> (Anticybersquatting Consumer Protection Act; Federal Trademark Infringement; Common Law Trademark Infringement) |

Plaintiff Diners Club International Ltd. ("Diners Club"), by and through its undersigned counsel, brings this Complaint against Defendants Arvin and Jane Doe Poole (collectively, "Poole"), SHAARP Ventures, LLC, d/b/a SHAARP Hosting ("SHAARP Ventures"), Gwen D. and John Doe Cash (collectively, "Cash"), GDC Enterprises ("GDC Enterprises"), and GDCash, LLC ("GDCash") seeking relief pursuant to 15 U.S.C. § 1125(d)(1) for Defendants' bad-faith use, registration and/or reselling of the domain names <phoenixdinersclub.com>, <austindinersclub.com>, <albuquerquedinersclub.com>, <atlantadinersclub.com>, <bayareadinersclub.com>,

CHI 59,246,861

<beavertondinersclub.com>, <birminghamdinersclub.com>, <bostondinersclub.com>, <charlottedinersclub.com>, <chicagodinersclub.com>, <citydinersclub.com>, <dcdinersclub.com>, <denverdinersclub.com>, <detroitdinersclub.com>, <indianapolisdinersclub.com>, <jacksonvilledinersclub.com>, <kansascitydinersclub.com>, <ladinersclub.com>, <lasvegasdinersclub.com>, <louisvilledinersclub.com>, <memphisdinersclub.com>, <miamidinersclub.com>, <milwaukeedinersclub.com>, <minneapolisdinersclub.com>, <nashvilledinersclub.com>, <nycdinersclub.com>, <orlandodinersclub.com>, <phillydinersclub.com>, <sandiegodinersclub.com>, <sanfranciscodinersclub.com>, <sanjosedinersclub.com>, <seattledinersclub.com>, <stlouisdinersclub.com>, <tucsondinersclub.com>, <dallasdinersclub.com>, <houstondinersclub.com>, <sanantoniodinersclub.com> (collectively, the "Infringing Domain Names"), Trademark Infringement pursuant to 15 U.S.C. § 1114(1), and common law trademark infringement under Arizona law, and alleges as follows:

## NATURE OF ACTION

1.   This action is brought pursuant to the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d)(1), for trademark infringement under the Federal Trademark Act, 15 U.S.C. § 1114(1), and for common law trademark infringement under Arizona law. Diners Club owns the venerable and well-known DINERS CLUB trademark, which represents a premium global brand that issued the world's first credit card. Diners Club credit cards are issued today in more than 200 countries and 70 local currencies, and after more than 43 years of continuous use, the DINERS CLUB mark has become synonymous with card/payment solutions that combine a superior product package, unsurpassed service, and award-winning rewards with universal acceptance. The DINERS CLUB mark is also used to promote products and

services of others through, among other things, credit card user loyalty programs, including but not limited to restaurants.

2. Notwithstanding Plaintiff's rights to the DINERS CLUB mark, and despite having no legitimate reason to do so, Defendants registered, used, and/or resold the Infringing Domain Names to promote their advertising services featuring third party restaurant advertisers (at <austndinersclub.com> only) and the goods and services of others including but not limited to competing credit card services (on each of the other Infringing Domain Names). Defendants' incorporation of the DINERS CLUB mark as part of each Infringing Domain Name violates the ACPA, 15 U.S.C. § 1125(d)(1), and constitutes federal and common law trademark infringement. Plaintiff Diners Club seeks damages, attorneys' fees, costs, and permanent injunctive relief.

3. Diners Club brought a Complaint against Defendant GDCash in accordance with the Uniform Domain Name Dispute Policy on July 8, 2009 with respect to its use of all of the Infringing Domain Names except for <austindinersclub.com>. The Panel charged with deciding this UDRP Complaint found that Defendants' use of these Infringing Domain Names violated Defendants' rights, and ordered that the Infringing Domain Names be transferred to Diners Club.

4. Diners Club brought a UDRP Complaint against Defendant GDC Enterprises with respect to its use of Infringing Domain Name <austindinersclub.com> on August 19, 2009. The Panel charged with deciding the August 2009 UDRP found that the Infringing Domain Name <austindinersclub.com> was identical to or confusingly similar to Diners Club's DINERS CLUB Marks, but GDC Enterprises had rights or legitimate interests in the name and did not otherwise register <austindinersclub.com> in bad faith. Because of this ruling, the Infringing Domain Name <austindinersclub.com> remains in Defendants' possession.

## THE PARTIES

5. Plaintiff Diners Club International Ltd. is a New York corporation having its principal place of business at 8430 West Bryn Mawr Avenue, Chicago, Illinois 60631.

6. Defendant Arvin Poole is a resident of the State of Texas and has an address of 2311 West Rundberg Lane, Austin, Texas 78758. Mr. Poole, by and through his business defendants SHAARP Ventures, resold to Defendants Cash, GDCash, and GDC Enterprises each of the Infringing Domain Names in May 2009.

7. Defendant Arvin Poole is and at all relevant times was married to Jane Doe Poole and all acts alleged herein were committed in furtherance of their marital community.

8. Defendant SHAARP Ventures, LLC is a Texas limited liability company having its principal place of business at 2311 West Rundberg Lane, Austin, Texas 78758. Upon information and believe, SHAARP Ventures is currently doing business using the name SHAARP Hosting. SHAARP Ventures resold to Defendants Cash, GDCash, and GDC Enterprises each of the Infringing Domain Names in May 2009.

9. Defendant Gwen D. Cash is resident of the State of Texas who, upon information and belief, resides at 8701 Bluffstone Circle 6208, Austin, Texas 78759. Cash is responsible for registering the Infringing Domain Names. Attached hereto as **Exhibit 1** are true and correct historic copies of the WHOIS records for each of the Infringing Domain Names showing their registration details at the time the Plaintiff filed UDRP Complaints to recover each.

10. Defendant Gwen Cash is, and at all relevant times was, married to John Doe Cash and all acts alleged herein were committed in furtherance of their marital community.

11. Defendant GDCash, LLC is a Texas limited liability company having its principal place of business at 3801 Capital Of Texas Highway, Suite E240-97, Austin, Texas 78759.

12. Defendant GDC Enterprises is a Texas entity that also has its principal place of business at 3801 Capital Of Texas Highway, Suite E240-97, Austin, Texas 78759. GDCash, LLC and GDC Enterprises are related entities, and are, upon information and belief, both owned and operated by defendant Gwen D. Cash.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction under the Lanham Act pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and 1338(b).

14. This Court has personal jurisdiction over Defendants based upon the following: (a) by registering the Infringing Domain Names, each of the Defendants contracted with Wild West Domains, Inc. ("Wild West Domains"), an Arizona registrar and the registrar of the Infringing Domain Names, to have all disputes regarding the Infringing Domain Names heard in the State of Arizona; (b) each of the Defendants also purposely availed themselves of the benefits of doing business in Arizona by actually transacting business in Arizona; (c) each of the Defendants directed their business activities to Arizona by operating websites on the Internet that are accessible to residents of the State of Arizona; and (d) each of the Defendants utilize content produced by Wild West Domains, an Arizona entity, on the websites associated with the Infringing Domain Names.

15. Venue is proper in the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1391(b). In addition, venue is proper in this District pursuant to Defendants' registration agreements with Wild West Domains.

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

## ALLEGATIONS COMMON TO ALL COUNTS

### Plaintiff's Famous Mark

16. Plaintiff Diners Club owns numerous federal registrations with the United States Patent and Trademark Office (the "USPTO") for the DINERS CLUB mark, and variants thereof, many of which have been in continuous use for more than 20 years.

17. Among other applications and registrations, the mark DINERS CLUB, U.S. Reg. No. 0828013 (incontestable status), was registered on April 25, 1967 for "extension of credit to customers who purchase at subscribing retail establishments and making collections from such customers through a central billing system." A true and correct copy of the DINERS CLUB trademark registration certificate as maintained by the USPTO is attached hereto as **Exhibit 2**.

18. Diners Club's mark, DINERS CLUB INTERNATIONAL, U.S. Reg. No. 2658760 (incontestable status), was registered on December 10, 2002 for, among other goods and services, "incentive award programs to promote the sale of products and services of others...." A true and correct copy of the DINERS CLUB INTERNATIONAL trademark registration certificate as maintained by the USPTO is attached hereto as **Exhibit 3**.

19. In addition to rights in the United States, Diners Club products and services, which incorporate all or part of the DINERS CLUB mark, are accepted in over 200 countries throughout the world.

20. Diners Club has made extensive use of the DINERS CLUB and DINERS CLUB INTERNATIONAL marks by offering its customers the opportunity to purchase goods and services on credit throughout the United States and around the world and obtain loyalty rewards for doing so. In addition, Diners Club has used its DINERS CLUB Mark to promote the goods and services of others, including but not limited to restaurant

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

services. Attached as **Exhibit 4** is a print out of the various restaurants that Diners Club promotes using its DINERS CLUB and DINERS CLUB INTERNATIONAL marks.

21.  The products and services sold or promoted under the DINERS CLUB and DINERS CLUB INTERNATIONAL marks are promoted across the United States and around the world.

22.  As evidenced by its incontestable registrations in place well before the Infringing Domain Names were registered, the DINERS CLUB and DINERS CLUB INTERNATIONAL marks were distinctive at the time the Infringing Domain Names were registered.

**Defendants' Bad-Faith Registration and Use of the Infringing Domain Names**

23.  Defendants purchased the Infringing Domain Names and registered the them with the Internet registrar Wild West Domains, Inc. long after Diners Club's federally-registered DINERS CLUB and DINERS CLUB INTERNATIONAL marks became incontestably distinctive.

24.  Without any intellectual property rights in the DINERS CLUB and DINERS CLUB INTERNATIONAL marks, Defendants purchased the Infringing Domain Names, each of which have the form <[CITY]dinersclub.com>, with the bad-faith intent to profit from the goodwill and value associated with the DINERS CLUB and DINERS CLUB INTERNATIONAL marks.

25.  Defendants' registration and use of the Infringing Domain Names was conducted with full knowledge of Diners Club's rights in the DINERS CLUB and DINERS CLUB INTERNATIONAL marks.  By registering and using the Infringing Domain Names, Defendants sought to confuse Diners Club's customers and to divert them to the goods and services offered at the websites associated with each of the Infringing Domain Names.

26. Defendants have deliberately harmed, and will continue to harm, the goodwill enjoyed by the DINERS CLUB and DINERS CLUB INTERNATIONAL marks in the United States among virtually all consumers by creating a false association between the genuine products and services provided by Diners Club and those associated with Defendants.

27. The Infringing Domain Names incorporate Diners Club's distinctive DINERS CLUB and DINERS CLUB INTERNATIONAL trademarks almost in their entirety and are confusingly similar to the DINERS CLUB and DINERS CLUB INTERNATIONAL marks.

28. Defendants Poole and SHAARP Ventures resold each of the Infringing Domain Names to Defendants Cash, GDCash, and GDC Enterprises in May 2009.

29. Most of the Infringing Domain Names were associated with a pay-per-click website that feature links to Diners Club's competitors and/or links to other websites that advertize or sell competing products and services until Diners Club brought a Complaint against Defendants in accordance with the Uniform Domain Name Dispute Resolution Policy on July 8, 2009 (the "July 2009 UDRP Complaint").

30. The National Arbitration Forum Panel charged with deciding the July 2009 UDRP Complaint decided on August 21, 2009 that Defendants' use of the Infringing Domain Names was indeed a violation of Diners Club's rights in its DINERS CLUB and DINERS CLUB INTERNATIONAL marks, and ordered that the Infringing Domain Names be transferred to Diners Club.

31. The National Arbitration Forum Panel also decided on August 21, 2009 that Defendants had no legitimate rights to use Plaintiff's DINERS CLUB and DINERS CLUB INTERNATIONAL marks, and their registration and subsequent use of domain names having the form <[CITY]dinersclub.com> was done in bad faith.

32. Wild West Domains transferred 36 of the above-listed 37 Infringing Domain Names to Diners Club on August 21, 2009. The transferred Infringing Domain Names are currently under Diners Club's control.

33. The Infringing Domain Name <austindinersclub.com> was not part of the July 2009 UDRP Complaint and is in Defendants' possession and control. The website having the URL <austindinersclub.com> advertises Defendants' business, which is, in part, to promote the goods and services of others through the sale of advertising to restaurants. A true and correct printout of the website associated with the Infringing Domain Name <austindinersclub.com> advertizing competing products and services is attached hereto as **Exhibit 5**.

34. Defendants' promotion of the goods and services of others, including but not limited to selling advertising to restaurants, directly competes with Diners Club's goods and services.

35. None of the Defendants are affiliated with Diners Club, they are not commonly known by each of the Infringing Domain Names, and they are not authorized to use Diners Club's trademarks or to profit from the goodwill Diners Club has generated in the DINERS CLUB and DINERS CLUB INTERNATIONAL marks.

36. Defendants have no legitimate reason to use Diners Club's trademarks in connection with their online commercial activities.

37. Defendants' bad-faith use, registration, and/or resale of the Infringing Domain Names was and is intentional, willful, and designed to unlawfully misappropriate and trade off Diners Club's goodwill and reputation.

38. Defendants' acts described herein continue to cause Diners Club irreparable harm for which it has no adequate remedy at law.

## COUNT I
### Cybersquatting Under the Anticybersquatting Consumer Protection Act
### (15 U.S.C. § 1125(d)(1))

39. Diners Club realleges and incorporates by reference the paragraphs above as if fully set forth herein.

40. The Infringing Domain Names are each confusingly similar to Plaintiff's DINERS CLUB and DINERS CLUB INTERNATIONAL marks, which were distinctive at the time Defendants purchased and registered the Infringing Domain Names.

41. Defendants registered and used the Infringing Domain Names with a bad-faith intent to profit from Plaintiff's DINERS CLUB and DINERS CLUB INTERNATIONAL marks.

42. Defendants' use of the Infringing Domain Names has caused, and will continue to cause, irreparable harm to Plaintiff's goodwill and reputation.

43. Defendants' actions were willful, and Plaintiff has no adequate remedy at law.

44. Defendants' activities as alleged herein violate the federal Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1).

45. As a result of Defendants' willful and intentional actions, Plaintiff has incurred attorneys' fees and costs.

46. As a result of Defendants' willful and intentional actions, Plaintiff has been damaged in an amount to be proven at trial.

## COUNT II
### Federal Trademark Infringement
### (15 U.S.C. § 1114(1))

47. Diners Club realleges and incorporates by reference the paragraphs above as if fully set forth herein.

48. Defendants' use of all or part of the DINERS CLUB and DINERS CLUB INTERNATIONAL marks in the Infringing Domain Names is likely to cause confusion with Plaintiff's DINERS CLUB and DINERS CLUB INTERNATIONAL Marks.

49. Defendants' conduct therefore infringes upon Diners Club's exclusive rights in its federally registered DINERS CLUB and DINERS CLUB INTERNATIONAL marks in violation of the federal Trademark Act, 15 U.S.C. § 1114(1).

50. Defendants' conduct complained of herein was and is intentional and willful.

51. Defendants' acts complained of herein have damaged Diners Club and, unless enjoined, will continue to damage and cause irreparable injury to Diners Club's reputation and goodwill.

52. Diners Club has no adequate remedy at law.

53. As a result of Defendants' willful and intentional actions, Plaintiff has incurred attorneys' fees and costs.

54. As a result of Defendants' willful and intentional actions, Plaintiff has been damaged in an amount to be proven at trial.

## COUNT III
### Common Law Trademark Infringement

55. Diners Club realleges and incorporates by reference the paragraphs above as if fully set forth herein.

56. Defendants' use of all or part of the DINERS CLUB and DINERS CLUB INTERNATIONAL marks in the Infringing Domain Names is likely to cause confusion with Plaintiff's DINERS CLUB and DINERS CLUB INTERNATIONAL Marks.

57. By reason of the foregoing activities, Defendants have violated and infringed Diners Club's common law rights in its DINERS CLUB and DINERS CLUB INTERNATIONAL marks under the common law of the State of Arizona.

58. Defendants' conduct complained of herein was and is intentional and willful.

59. Defendants' acts complained of herein have damaged Diners Club and, unless enjoined, will continue to damage and cause irreparable injury to Diners Club's reputation and goodwill.

60. Diners Club has no adequate remedy at law.

61. As a result of Defendants' willful and intentional actions, Plaintiff has incurred attorneys' fees and costs.

62. As a result of Defendants' willful and intentional actions, Plaintiff has been damaged in an amount to be proven at trial.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Diners Club International Ltd. respectfully requests that this Court enter an order for Plaintiff and against all Defendants as follows:

(a) Defendants and their respective agents, representatives, servants, employees, attorneys, officers, directors, shareholders, licensees, affiliates, joint venturers, parents, subsidiaries, related corporations and all others in privity or acting in concert with them be preliminarily and permanently enjoined from:

(i) Using, linking to, transferring, selling, reselling, registering, exercising control over, or otherwise owning any of the Infringing Domain Names or any other domain name or trademark or service mark that incorporates, in whole or in part, any of Plaintiff's marks, including the DINERS CLUB and DINERS CLUB INTERNATIONAL marks;

(ii) Using false representations or descriptions in commerce or using false designations of origin that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

HI 59,246,861

1

Plaintiff, or as to the origin, sponsorship, or approval of Defendants' services by Plaintiff;

   (iii) Otherwise infringing Plaintiff's marks, including but not limited to the DINERS CLUB and DINERS CLUB INTERNATIONAL marks; and

   (iv) Unfairly competing with Plaintiff or otherwise injuring its business reputation in any manner;

 (b) Wild West Domains, Inc. is to cooperate with a registrar to be appointed by Plaintiff to re-register the Infringing Domain Name <austindinersclub.com> in Plaintiff's name and under Plaintiff's ownership;

 (c) Defendants be required to pay to Plaintiff statutory damages in an amount not less than $3,700,000 pursuant to the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) representing a maximum statutory damages award of $100,000 per Infringing Domain Name;

 (d) Defendants be required to pay to Plaintiff all profits obtained from, or damages caused to Defendants by, Defendants' use of each of the Infringing Domain Names, and that such amounts be trebled for Defendants' willful infringement of Plaintiff's DINERS CLUB and DINERS CLUB INTERNATIONAL marks;

 (e) Defendants be ordered to pay Plaintiff its attorneys' fees and costs; and

 (f) Plaintiff be awarded such other and further relief as this Court may deem just.

RESPECTFULLY SUBMITTED this 23rd day of February, 2010.

      GREENBERG TAURIG, LLP
      By:   /s/ Kimberly A. Warshawsky
       Paul D. McGrady, Jr., *pro hac app. pending*
       Kimberly A. Warshawsky
       Jason B. Elster, *pro hac app. pending*
       Attorneys for Diners Club International Ltd.